508 S.E.2d 848

Gladys H. MULLINAX, Respondent,

v.

J.M. BROWN AMUSEMENT CO., INC., Petroleum Distributors, Inc., and J.R. Stroupe, of which J.M. Brown Amusement Co., Inc., and Petroleum Distributors, Inc. are Petitioners.

No. 24853.

Supreme Court of South Carolina.

Heard May 27, 1998.

Decided Nov. 16, 1998.

90

Richard H. Rhodes, Jonathan Z. McKown, and Wade S. Weatherford, III, all of Burts, Turner, Rhodes & Thompson, of Spartanburg, for petitioner J.M. Brown Amusement Co., Inc. William E. Winter, Jr., and William G. Rhoden, both of Winter & Rhoden, of Gaffney, for petitioner Petroleum Distributors.

J. Gregory Studemeyer, of Columbia; and Thomas F. McDow, of Rock Hill, both for respondent.

J.R. Stroupe, of Gaffney, petitioner pro se.

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

FINNEY, Chief Justice:

We granted a writ of certiorari to review the Court of Appeals' decision in *Mullinax v. J.M. Brown Amusement Co., Inc.,* 326 S.C. 453, 485 S.E.2d 103 (Ct.App.1997). We affirm.

Gladys Mullinax, respondent, filed this lawsuit to recover her husband's gambling losses pursuant to S.C.Code Ann. § 32–1–20 (1991). Mr. Mullinax sustained these losses during 1991 to 1993 while playing video poker on petitioners' machines. Mr. Mullinax contacted an attorney and was told that he could sue for his losses from the preceding three months or someone else could sue for three times the amount of his losses from the preceding three years. Together, Mr. and Mrs. Mullinax visited the attorney and Mr. Mullinax paid the attorney. Mr. Mullinax continued to play the video poker machines even after visiting the attorney.

■ At the conclusion of respondent's case, petitioners moved for a directed verdict on the ground that respondent and her husband acted in covin and collusion in bringing the lawsuit. The trial judge granted petitioners' motion for directed verdict on the ground that the suit was respondent's in name only and the suit was collusive as a matter of law. The Court of Appeals reversed finding the evidence does not conclusively show that Mr. Mullinax intentionally refrained from bringing the action in his own name so that respondent could sue for three times the amount. Petitioners J.M. Brown Amusement Co., Inc. (Brown) and Petroleum Distributors, Inc. petitioned for review by this Court. We affirm.

■ In ruling on directed verdict motions, the trial court must view the evidence and all inferences which may reasonably be drawn therefrom in the light most favorable to the non-moving party. *Fleming v. Borden, Inc.,* 316 S.C. 452, 450 S.E.2d 589 (1994). If more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury. *Id.* In reviewing an order granting a directed verdict, the appellate court views the evidence and all reasonable inferences from the evidence in the light most favorable to the party against whom the directed verdict was granted. *Unlimited Services, Inc. v. Macklen Enter., Inc.,* 303 S.C. 384, 401 S.E.2d 153 (1991).

Respondent brought this action under S.C.Code Ann. § 32–1–20 (1991)[1] which allows a third party to sue for recovery of

---

1. Section 32–1–20 provides that:

the gambling losses of another when the loser fails to sue for those losses. Respondent asserts that the statute contemplates collusion on the part of the gambler to purposefully neglect to bring a lawsuit during the three month period provided in S.C.Code Ann. § 32–1–10 (1991) [2] so that a third party can recover treble damages under § 32–1–20. Respondent maintains there was no evidence presented that her husband purposely failed to file suit to allow respondent to sue for a greater amount.

In this case of first impression, the Court of Appeals looked to other jurisdictions for guidance in determining the implication of covin and collusion under similar gambling loss recovery statutes. The Illinois Supreme Court considered a case under a similar gambling loss recovery statute in *Kizer v. Walden*.[3] In *Kizer* a brother brought an action to recover the losses of his gambling brother. In considering the issue of covin or collusion, the *Kizer* court found the jury should have been allowed to decide whether any collusion between the brothers was so extreme as to bar suit under the statute. The *Kizer* court looked for evidence that the loser refrained from recovering his losses within the statutory period and then brought the action "in the name of his brother, or some other person, for the purpose of recovering against the winner treble the amount of his losses." *Kizer*, 65 N.E. at 118. The court concluded that the trial court is not entitled to take the

In case any person who shall lose such money or other thing as aforesaid shall not, within the time aforesaid, really and bona fide and without covin or collusion sue and with effect prosecute for the money or other things so by him or them lost and paid and delivered as aforesaid, it shall be lawful for any other person, by any such action or suit as aforesaid, to sue for and recover the same and treble the value thereof. . . .

2. Section 32–1–10 states that:

Any person who shall at any time or sitting, by playing at cards, dice table or any other game whatsoever or by betting on the sides or hands of such as do play at any of the games aforesaid, lose to any person or persons so playing or betting, in the whole, the sum or value of fifty dollars and shall pay or deliver such sum or value or any part thereof shall be at liberty, within three months then next ensuing, to sue for and recover the money or goods so lost and paid and delivered or any part thereof from the respective winner or winners. . . .

3. 198 Ill. 274, 65 N.E. 116 (Ill.1902).

case from the jury where the right of recovery depends on the existence of extrinsic facts about which the evidence is conflicting. *Kizer, id.*

The Court of Appeals noted that Mr. Mullinax denied telling the first attorney to delay filing an action and stated he called the lawyer "several times.... He never made a move and never [did] anything, until finally I called him and cussed him out and told him to send my stuff back to me ... He drug his feet from March until about October." Mr. Mullinax testified that he had not engaged in any type of trickery, deceit or collusion. He testified further that the lawsuit was respondent's and not his and he told respondent that he would help her get the money back anyway he could. While Mr. Mullinax admitted that he compiled the evidence of his losses for the lawsuit, he gathered the information because he was the only one that could make sense of it. Mr. Mullinax denied that his efforts to assist his wife were collusive but he only wanted to help her. Respondent testified that she was not in "cahoots" with her husband and that Mr. Mullinax did not purposely fail to file an action within three months in order to allow her to sue for a greater amount. The Court of Appeals noted that it was natural for Mr. Mullinax to assist his wife in preparing for the lawsuit since he had the necessary information and documentation. The Court of Appeals concluded there was more than one reasonable inference that can be drawn from the evidence, therefore the case must be submitted to the jury. We agree.

■ Next, petitioner Brown contends the gaming statute is unconstitutional and inapplicable to the facts of this case. Brown asserts since he is licensed under State law it "would defy all notions of substantial justice and fair play" to subject him to liability under the gaming statute. Brown further asserts he should not be subject to liability as long as he complies with the Video Game Machines Act (VGMA).[4]

Petitioner's argument is not preserved for review as it was not raised to nor ruled upon by the trial judge. *Creech v. South Carolina Wildlife and Marine Resources Dep't,* 328

---

4. We note that in *Berkebile v. Outen,* we found the gaming statute did not require playing of illegal games and was applicable to loss incurred by a gambler playing legalized video poker. 311 S.C. 50, 426 S.E.2d 760 (1993).

S.C. 24, 491 S.E.2d 571 (1997) (issue must have been raised to and ruled upon by the trial judge to be preserved for review).

■ Petitioner Petroleum Distributors contends the Court of Appeals erred in failing to hold that the causes of action occurring within three months of the initial complaint had not accrued when the suit was filed.

S.C.Code Ann. § 32–1–10 provides that anyone who loses more than $50.00 at a sitting while gambling has three months from the date of the loss to sue for and recover the amount lost. Section 32–1–20 provides that if the gambler does not sue to recover the losses within three months, a third party may thereafter sue for recovery of the gambler's losses.

In the initial complaint filed on November 15, 1993, respondent sought to recover her husband's losses from 1991 through 1993. Respondent filed an amended complaint in November 1994 seeking recovery for losses from June 11, 1991 through November 3, 1993. Petitioner asserts at the time of the initial complaint, respondent had no cause of action under § 32–1–20 for any claim after August 15, 1993, as those causes of action remained with the gambler under § 32–1–10. Petitioner argues the defect was not cured by the amended complaint because the amended complaint relates back to the date of the initial complaint under Rule 15(c), SCRCP. Respondent answers that the issue of ripeness was not in issue before the trial court because neither petitioner pled a defense dealing with ripeness.

The amended complaint was sufficient as a supplemental pleading pursuant to Rule 15(d), SCRCP. Rule 15(d) provides that the court may permit a party to serve a supplemental pleading setting forth transactions or occurrences or events which happened since the date of the pleading sought to be supplemented, whether or not the original pleading is defective in its statement of a cause of action or defense. Accordingly, the amended complaint sufficiently asserted the causes of action which accrued after the initial complaint.

■■ Finally, Petroleum Distributors asserts the VGMA repeals by implication the gaming statutes §§ 32–1–10 and 32–1–20. Petitioner argues the VGMA sets forth a comprehensive set of rules and regulations concerning video poker machines with limitations on the amount of payoffs and taxes on each machine. Repeal by implication is disfavored and is

found only when two statutes are incapable of reconcilement. *Butler v. Unisun Ins. Co.*, 323 S.C. 402, 475 S.E.2d 758 (1996). The Court of Appeals addressed this question at length in *Justice v. Pantry* and concluded that section 32–1–20 was not impliedly repealed by enactment of the VGMA because the statutes are not repugnant to each other and are not incapable of a reasonable reconcilement. 330 S.C. 37, 496 S.E.2d 871 (Ct.App.1998). We agree, the VGMA did not impliedly repeal the gaming statutes. *Justice v. Pantry, supra.*

For the foregoing reasons, the Court of Appeals' decision is **AFFIRMED.**

TOAL and MOORE, JJ., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.

BURNETT, J., concurring in result only.